UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILL MOSES PALMER, III, | No. C 08-5378 SI (pr) |
| Plaintiff, | **ORDER DENYING MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT** |
| v. | |
| G. R. SALAZAR; et al., | |
| Defendants. / | |

## INTRODUCTION

Will Moses Palmer, III, filed this pro se civil rights action under 42 U.S.C. § 1983. This matter is now before the court for consideration of defendants' motion to dismiss and plaintiff's motion for summary judgment. The motions will be denied.

## BACKGROUND

In his first amended complaint, Palmer alleged that defendants Salazar and Sanchez violated his right to due process in a disciplinary proceeding against him at Salinas Valley State Prison. He alleged that hearing officer Salazar violated his right to due process by refusing to allow him to present certain witnesses and evidence at his disciplinary hearing. He also alleged that he was denied adequate investigative employee services by defendant Sanchez. The court liberally construed the first amended complaint and found that it stated a cognizable § 1983 claim against defendants Salazar and Sanchez for violating Palmer's right to due process.

The first amended complaint alleged the following: A CDC-115 rules violation report was issued charging Palmer with battery on a peace officer for an incident that occurred on July 16, 2004, when he was at the Monterey County Superior Court for a court appearance. See First

Amended Complaint, ¶ 14. Correctional officer E. Sanchez was appointed as his investigative employee, but failed to gather requested evidence. See id. at ¶¶ 16-19. Correctional lieutenant G. R. Salazar was appointed as the hearing officer. See id. at ¶ 20. At the first scheduled date for a hearing on the CDC-115, Salazar continued the hearing because some evidence and witnesses Palmer had asked investigative employee Sanchez to obtain had not been obtained. See id. at ¶¶ 20-22. On the second date of the continued hearing, some of the evidence and witnesses still had not been secured. See id. at ¶ 23. Hearing officer Salazar refused to allow Palmer to present civilian witness statements and refused to question any civilian witnesses by telephone, although he did call another prison to interview two inmate witnesses. See id. at ¶ 25. The hearing was again continued so that staff witnesses could be at the hearing. On the third date of the continued hearing, Palmer was allowed to question two corrections officers, but the hearing officer refused to continue the hearing again to allow Palmer to question other corrections officers. See id. at ¶¶ 28-29. Salazar found Palmer guilty and refused to review photos of staff injuries. See id. at ¶ 30. Salazar recommended that Palmer be given a SHU term for the offense. See id. The institutional classification committee adopted this recommendation and assessed an 18-month SHU term. See id. at ¶ 31.

Palmer alleged that he remained in disciplinary housing until July 14, 2005, almost a year after the incident. See id. FAC, ¶ 31. He alleged the following about the conditions in segregated housing:

> Plaintiff was not given CCR 15 § 3044(G)(4)(G) group D privileges, and not allowed to possess one T.V. or Radio in his Security Housing Unit cell; Plaintiff was not allowed the required (10) hours of outdoor exercise that the CDCR rules and Regulations require Security Housing Unit placed prisoners to receive weekly; Plaintiff as a A.D.A. prisoner was not allowed to possess his cane/medical appliance while in the Segregation housing unit; and Plaintiff was caused to remain in the lock up unit until July 14, 2005.
>
> 32. Plaintiff was confined in a retalitorial (sic) environment, where administrative segregation officials, routines trashed plaintiffs cell, denied Plaintiff access to the law library, and outdoor exercise, and engaged in prohibited acts to prevent Plaintiff from being released from the lock up Unit, after a Monterey County Superior Court verdict was reached by a jury, finding Plaintiff not guilty of having committed the Battery offense defendant G.R. Salazar had found Plaintiff guilty of having committed.

FAC, ¶¶ 31-32 (errors in source).

**DISCUSSION**

A. <u>Defendants' Motion To Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief can be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). The court "must accept as true all of the factual allegations contained in the complaint," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), and must construe <u>pro se</u> pleadings liberally, <u>Hebbe v. Pliler</u>, 611 F.3d 1202, 1205 (9th Cir. 2010). The court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. <u>See</u> <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988, <u>amended</u>, 275 F.3d 1187 (9th Cir. 2001). In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. <u>See</u> <u>MGIC Indemn. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).

Defendants attack Palmer's pleading on three fronts: (1) they argue that Palmer failed to allege the deprivation of a protected liberty interest, (2) they argue that he received sufficient procedural protections when he was disciplined, and (3) they argue that they are entitled to qualified immunity.

1. <u>Protected Liberty Interest</u>

Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citing <u>Vitek v. Jones</u>, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). The disciplinary decision for Palmer did not involve a change so severe as to implicate the Due Process Clause itself. Deprivations that

3

are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87.[1] An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

Defendants argue that Palmer did not allege a deprivation of a liberty interest of real substance. The court disagrees. In determining whether a restraint is an "atypical and significant hardship," three guideposts have been identified to frame the inquiry: whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody; the duration of the condition and degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003). These factors need not all be present for there to be an atypical and significant hardship. Cf. Serrano, 345 F.3d at 1078 ("Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a 'condition or combination of conditions or factors'"). For example, although Serrano and Ramirez list the impact on the duration of a prisoner's sentence among the factors to be considered, this is not a necessary element of an atypical and significant hardship; indeed, Sandin, 515 U.S. at 487, suggests that it is an alternate way to find a protected liberty interest. The discipline imposed may not affect the amount of time Palmer spends in prison, but – with the necessary liberal construction – his

---

[1] There is some uncertainty as to whether, in addition to a liberty interest of real substance, there also must be state statutes or regulations that narrowly restrict the power of prison officials to impose the deprivation in order for a procedurally protected liberty interest to be found. Compare Sandin, 515 U.S. at 483-84 ("we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause"), and id. at 486 ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation *in which a State might conceivably create a liberty interest*"), with Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life'"). The court need not decide that question because defendants do not assert that as a ground for dismissal.

4

allegations appear sufficient to allege an atypical and significant hardship. During a 12-month period, Palmer allegedly was deprived of certain privileges otherwise available, was not allowed to possess a television or radio, was not given the amount of outdoor exercise regularly scheduled (although it cannot be determined just how much he did get), and was not allowed to use his "cane/medical appliance" in his cell (although it is not clear why Palmer needed either within his cell). He also allegedly was routinely subjected to numerous unpleasantries (i.e., having his cell "trashed," being denied access to the law library, and being denied outdoor exercise), and other unidentified prohibited acts. Some of the conditions that Palmer allegedly experienced appear to not have been part of the conditions imposed on all prisoners in the disciplinary SHU, but that cannot be determined from the pleading. At the motion to dismiss stage, the court accepts his allegations in paragraphs 31 and 32 of his first amended complaint as the disciplinary SHU conditions.

Defendants argue that, since Palmer alleges he was in administrative segregation ("ad-seg") before he was put in disciplinary segregation, his conditions never changed. This argument has flawed reasoning: the proposition that B follows A does not mean that B equals A. The argument also misreads the first amended complaint: Palmer did not allege that his conditions never changed. Even if ad-seg and disciplinary housing had the same conditions, Palmer's pleading suggests that Palmer was at the end of his ad-seg placement, see First Amended Complaint, ¶ 5, which raises the possibility that the comparison should be between disciplinary housing and general population. Further, the similarity of the conditions in disciplinary housing and ad-seg does not necessarily mean that there is not a protected liberty interest implicated when one moves from one to the other, as both might amount to atypical and significant hardships.[2] One cannot determine from the pleading that placement in disciplinary

---

[2] The language in Serrano supports defendants' argument, but it is not the holding of the case. And the language seems to misread Sandin insofar as it suggests that there is no due process right for a prisoner who is being moved from administrative to disciplinary segregation, and that there is no due process right for one being moved to ad-seg from general population just because it is "discretionary." See generally Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system.") Defendants' approach would mean that prisoners would have no right to due process before being put in ad-seg because it is discretionary, and that no prisoner

housing did not work "a major disruption in his environment." <u>Sandin</u>, 515 U.S. at 486. Giving the first amended complaint the liberal construction required for <u>pro se</u> pleadings, it sufficiently alleges the deprivation of a protected liberty interest. <u>See</u> <u>Serrano</u>, 345 F.3d at 1078.

### 2. The Process Due

Defendants next argue that Palmer has not alleged that he was denied the requisite procedural protections. Defendants' argument is misguided. Defendants suggest the court should decide what procedural protections should be afforded, but fail to appreciate that the court is not in uncharted waters. When, as here, the plaintiff alleges the deprivation of a protected liberty interest in a disciplinary proceeding, the procedural protections to be afforded are set out in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564-70 (1974). Those procedural protections include the two at issue here: the qualified right to call witnesses and present evidence, and the qualified right to a helper. <u>See</u> <u>id.</u> at 566 ("the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"); <u>id.</u> at 570 ("[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff").

Liberally construed, the first amended complaint sufficiently alleges an interference with two of the <u>Wolff</u> procedural protections. Defendants do not argue that the alleged deficiencies in the investigative employee and any failure to call witnesses and present evidence did not amount to a violation of the <u>Wolff</u> protections, but instead argue that <u>Wolff</u> does not apply. Despite defendants' suggestion to the contrary, <u>Wilkinson</u> did not abrogate the <u>Wolff</u> protections

---

already in ad-seg would have a right to due process in connection with any placement in disciplinary housing as long as it did not lengthen his sentence. <u>Sandin</u> was not such a severe retrenchment of prisoners' due process rights.

1 for disciplinary proceedings. Wilkinson concerned the transfer of prisoners to a new supermax
2 facility for administrative rather than disciplinary reasons, so one would not expect that
3 Wolff would delineate the necessary procedural protections before such transfer. See Wilkinson,
4 545 U.S. at 228-29 (explaining that prison officials were not, for example, attempting to revoke
5 good-time credits "for specific, serious misbehavior," but instead were performing an inquiry
6 that "draws more on the experience of prison administrators, and where the State's interest
7 implicates the safety of other inmates and prison personnel.")  Defendants are not foreclosed
8 from arguing that any procedural deficiencies did not violate Wolff when the record is developed
9 in this case.

10 Defendants argue that there was sufficient evidence to support the decision.  This
11 argument is irrelevant because Palmer has not challenged the sufficiency of the evidence to
12 support the decision.  See Opposition, p. 12.  In any event, the court could not make such a
13 determination on the present record – which, as noted earlier, does not even include the rule
14 violation report.

15 Defendants also argue unconvincingly that Palmer's successful inmate appeal "negated"
16 any due process violation.  The argument ignores the fact that Palmer spent 12 months in the
17 disciplinary housing before his "housing situation was reevaluated and he was moved out of the
18 SHU."  Motion To Dismiss, p. 9.

### 3. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because the first amended complaint fails to state a cause of action.  The argument that the first amended complaint fails to state a claim upon which relief may be granted was rejected earlier in this order.  Defendants therefore are not entitled to qualified immunity on that ground.

Defendants also argue that they are entitled to qualified immunity because "the rights to 'call civilian witnesses' or order court transcripts were not clearly established."  Motion To Dismiss, p. 10. Defendants have described the rights with too much factual specificity.  It is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly

7

established. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987); <u>see, e.g.</u>, <u>Tekle v. United States</u>, 511 F.3d 839, 848 (9th Cir. 2007) (police officer can have fair warning that the force used was constitutionally excessive even absent Ninth Circuit case presenting same set of facts); <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996) (defendants' contention that they were entitled to qualified immunity because there was no clearly established law requiring them to provide kidney transplant to prisoner on dialysis stated issue too narrowly). <u>Wolff</u> established the qualified right to call witnesses and present evidence. Defendants might succeed on their qualified immunity argument, but cannot do so on the limited record that is now before the court. For example, the record right now is limited to the allegation that several witnesses were not allowed. Once the record is developed by plaintiff to explain who he asked to call as witnesses and the reason he wanted to call each of those persons as witnesses, and once the record is developed by the defendants to explain the reason for disallowing the witnesses, the qualified immunity analysis may be done. See <u>Wolff</u>, 418 U.S. at 566 ("it would be useful for the [decision-maker] to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases"); <u>Ponte v. Real</u>, 471 U.S. 491, 497 (1985) (reason may be presented after-the-fact in court proceeding if the refusal to allow witnessses is challenged). Likewise, once the record is developed as to the documentary evidence that was disallowed – e.g., what plaintiff intended to prove with it, and why defendants didn't allow him to present it – the qualified immunity analysis may be done.

Defendants did not argue qualified immunity with regard to the claims Palmer made about the investigative employee. That appears to be a fertile area for qualified immunity because Palmer complains about the quality of work the investigative assistant did rather than that he did not receive an investigative assistant. Defendants are not foreclosed from making such an argument in their summary judgment motion or at trial.

B. <u>Plaintiff's Motion For Summary Judgment</u>

Palmer moved for summary judgment, seeking judgment as a matter of law on his due process claim. A briefing schedule will not be set and extended discussion of the motion is not

necessary because Palmer has fallen so far short of meeting his burden to show his entitlement to judgment as a matter of law against defendants in his moving papers.

On issues as to which the moving party bears the burden of proof at trial -- such as Palmer does on his due process claim -- he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992); cf. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (when moving party has the burden (e.g., a plaintiff on his claim for relief), "'his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'") He must establish the absence of a genuine issue of fact on each issue material to his claim. Id. at 1537. Once the moving party has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the claim.

Plaintiff fails to meet his initial burden. For example, he states that "defendants have admitted to not allowing the Plaintiff to present this evidence, (i.e., Court Reporter transcripts, photographic evidence, proving alleged injuries to have been falsified, and civilian unbias (sic) witnesses.)" Plaintiff's Opposition To Defendant's Motion To Dismiss Plaintiff's First Amended Complaint; And Cross Motion For Summary Judgment, p. 2; see also id. at 3, 8. Plaintiff misstates the facts: defendants have not made such an admission. While the rule of liberal construction requires the court to overlook many technical flaws in a pro se litigant's filings, it does not require or allow the court to overlook misstatements of the evidence. In addition to misrepresenting what defendants have stated, Palmer failed to present sufficient affirmative evidence showing his entitlement to relief on his due process claim. He has not established, for example, that the alleged failure to obtain the documentary evidence made any difference or that the failure to call certain witnesses made any difference. Cf. Tennessee Secondary School Athletic Ass'n v. Brentwood Academy, 551 U.S. 291, 303-04 (2007) (allegedly unconstitutional closed-door deliberations during which additional evidence was taken would have been harmless error). Many of Palmer's statements suggest he wanted to turn his disciplinary hearing into a challenge to the prison guards' interference with his court

United States District Court
For the Northern District of California

proceeding, but fails to show why that mattered to the charge of committing battery on an officer. See Def. Ex. B, order in Palmer v. Hatton, C 05-358 SI, at 14 ("correctional staff's failure to allow him to obtain his legal file is, in a nutshell, legally irrelevant").

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss and plaintiff's motion for summary judgment are DENIED. (Docket # 21, # 26.)

The court now sets the following briefing schedule for a motion for summary judgment by defendants, if they wish to file one:

1. Defendants must file and serve their dispositive motion no later than **February 4, 2011**. If defendants do not wish to file a motion for summary judgment, they shall so inform the court and plaintiff by this deadline.

2. Plaintiff must file and serve on defense counsel his opposition to the motion for summary judgment no later than **March 11, 2011**. In connection with preparing his opposition, plaintiff is cautioned to read the warning regarding summary judgment in the court's order of service.

3. Defendants must file and serve their reply brief (if any) no later than **March 25, 2011**.

The matter will be deemed submitted when defendants' reply brief is filed or the deadline for it passes. Plaintiff is not permitted to file a reply or any other response to the reply.

IT IS SO ORDERED.

Dated: December 10, 2010

_____
SUSAN ILLSTON
United States District Judge