UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILL MOSES PALMER, III,<br><br>      Plaintiff,<br><br>  v.<br><br>G. R. SALAZAR; et al.,<br><br>      Defendants.<br>                                   / | No. C 08-5378 SI (pr)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT, AND DENYING<br>PALMER'S CROSS-MOTION FOR<br>SUMMARY JUDGMENT** |

**INTRODUCTION**

Will Moses Palmer, III, filed a <u>pro se</u> civil rights complaint under 42 U.S.C. § 1983 alleging a due process claim against Salinas Valley State Prison (SVSP) Correctional lieutenant G. R. Salazar and Correctional officer E. Sanchez. The court found that his complaint stated a cognizable due process claim against defendants. Thereafter, Palmer filed his first amended complaint (FAC), which is the operative complaint in this action,[1] raising his due process claim against the same defendants and seeking damages as well as declaratory and injunctive relief.

This matter is now before the court for consideration of defendants' motion for summary judgment and Palmer's cross-motion for summary judgment. For the reasons discussed below, defendants' motion for summary judgment will be granted, and Palmer's cross-motion for summary judgment will be denied. Judgment will be entered in defendants' favor.

---

[1] At the time Palmer filed his FAC, defendants had not yet filed a responsive pleading.

**BACKGROUND**

The following background is undisputed unless otherwise noted.

This action stems from a CDC-115 rules violation report (RVR) that was issued charging Palmer with battery on staff for an incident that occurred on July 16, 2004, when he was at the Monterey County Superior Court for a court proceeding.[2] Palmer elected not to postpone his disciplinary hearing on that RVR pending the outcome of his criminal prosecution in Monterey County Superior Court relating to charges from the July 16, 2004 incident. In addition, Palmer requested an investigative employee. Defendant Sanchez was appointed as Palmer's investigative employee, and defendant Salazar was appointed as the hearing officer. The disciplinary hearing at issue took place on September 7, 2004, after being continued twice.

In his FAC, Palmer alleged that he was denied adequate investigative employee services by defendant Sanchez. Palmer also alleged that defendant Salazar violated his right to due process by refusing to allow him to present certain witnesses and evidence at his September 7, 2004 disciplinary hearing. The following background of Palmer's due process claim alleged in his FAC is taken from the court's order dated December 10, 2010:

> At the first scheduled date for a hearing on the CDC-115, Salazar continued the hearing because some evidence and witnesses Palmer had asked investigative

---

[2] This is the third action by Palmer on connected facts, as explained below:

In <u>Palmer v. Hatton</u>, No. C 05-358 SI, Palmer sued correctional officers for excessive force on him during the July 16, 2004 incident for which the CDC-115 was issued against him for committing a battery on one of them. The court granted summary judgment for defendants on Palmer's excessive force claim . . . . Palmer also had asserted the due process claim asserted in this action in the 2005 action, but the claim was dismissed from the 2005 action because he had not exhausted administrative remedies for the claim before filing the 2005 action.

The reason Palmer was in the courthouse that day was to face criminal charges for assault and battery on prison staff on December 19, 2002. He sued prison officials for use of excessive force on him during the December 19, 2002 incident in <u>Palmer v. Lamarque</u>, No. C 03-4213 SI. Judgment was entered in defendants' favor after a bench trial in that 2003 action.

Mar. 13, 2009 Order at note 1. The judgment in the 2003 action was affirmed by both the Ninth Circuit Court of Appeals and the United States Supreme Court. The judgment in the 2005 action was also affirmed by the Ninth Circuit.

Having exhausted his administrative remedies as to his due process claim, Palmer filed the present action.

2

> employee Sanchez to obtain had not been obtained. See id. at ¶¶ 20-22. On the second date of the continued hearing, some of the evidence and witnesses still had not been secured. See id. at ¶ 23. Hearing officer Salazar refused to allow Palmer to present civilian witness statements and refused to question any civilian witnesses by telephone, although he did call another prison to interview two inmate witnesses. See id. at ¶ 25. The hearing was again continued so that staff witnesses could be at the hearing. On the third date of the continued hearing, Palmer was allowed to question two corrections officers, but the hearing officer refused to continue the hearing again to allow Palmer to question other corrections officers. See id. at ¶¶ 28-29. Salazar found Palmer guilty and refused to review photos of staff injuries. See id. at ¶ 30. Salazar recommended that Palmer be given a SHU term for the offense. See id. The institutional classification committee adopted this recommendation and assessed an 18-month SHU term. See id. at ¶ 31.
>
> Palmer alleged that he remained in disciplinary housing until July 14, 2005, almost a year after the incident. See id.

Dec. 10, 2010 Order at 1-2.

In his FAC, Palmer alleged the following about the conditions in segregated housing:

> 31. Plaintiff was assessed a 18 month Security Housing Unit [SHU] term as a direct result of the finding of guilt on the battery offense. Plaintiff was caused to remain in [SVSP] administrative Segregation Lock up Unit under conditions posing a significant hardship, not endured by inmates housed in general population, or a CDR approved Security Housing Until facility. Plaintiff was not given CCR 15 § 3044(G)(4)(G) group D privileges, and not allowed to possess one T.V. or Radio in his Security Housing Unit cell; Plaintiff was not allowed the required (10) hours of outdoor exercise that the CDCR rules and Regulations require Security Housing Unit placed prisoners to receive weekly; Plaintiff as a A.D.A. prisoner was not allowed to possess his cane/medical appliance while in the Segregation housing unit; and Plaintiff was caused to remain in the lock up unit until July 14, 2005.
>
> 32. Plaintiff was confined in a retalitorial (sic) environment, where administrative segregation officials, routinely trashed plaintiffs cell, denied Plaintiff access to the law library, and outdoor exercise, and engaged in prohibited acts to prevent Plaintiff from being released from the lock up Unit, after a Monterey County Superior Court verdict was reached by a jury, finding Plaintiff not guilty of having committed the Battery offense defendant G. R. Salazar had found Plaintiff guilty of having committed.

FAC, ¶¶ 31-32 (errors in source).

The parties disagree about the length of time Palmer spent at the SHU.

As mentioned above, Palmer claims that he was housed at the SHU from July 16, 2004 until July 14, 2005 -- almost a full year. FAC, at ¶ 31. Meanwhile, defendants claim that Palmer's SHU-term was held in abeyance pending the resolution of his criminal proceeding stemming from the July 16, 2004 incident, People v. Palmer (Monterey County Superior Court

3

Case No. SS042154-A). On January 6, 2005, a Monterey County jury found Palmer not guilty of battery, but guilty of resisting an officer. Antonen Decl., Ex. B. Palmer was also found to have suffered one prior felony conviction. Id. Palmer's criminal proceeding concluded on March 23, 2005, when his twenty-five-year-to-life sentence was entered by the Monterey County Superior Court. Id. On May 12, 2005, Palmer's SHU-term was vacated. Salazar Decl., Ex. E. Therefore, defendants allege that, in total, Palmer served less than two months in the SHU -- from March 23, 2005 until May 12, 2005.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the due process claim occurred at SVSP in Monterey County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## DISCUSSION

I.   Defendants' Motion For Summary Judgment

  A.   Legal Standard for Summary Judgment

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, as is the situation with defendants' challenge to the due process claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the

4

nonmoving party to "go beyond the pleadings, and by her own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendants' qualified immunity defense, the moving party bears the burden of proof at trial, she must come forward with evidence which would entitle her to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). She must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson, 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint, or in this case a verified FAC, may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

### B.  Due Process Claim

Palmer alleges that defendant Sanchez violated his due process rights by failing to properly perform his duties as an investigative employee. FAC, ¶ 19. Specifically, defendant Sanchez failed to collect any of the evidence that Palmer requested, which he had planned to use

to defend himself at the September 7, 2004 disciplinary hearing. Palmer's due process claim also stems from the following alleged decisions by defendant Salazar at the September 7, 2004 disciplinary hearing, including refusing to: (1) permit the testimony of various additional witnesses, i.e., the Superior Court Judge, the Superior Court Bailiff, the court reporter, Palmer's former attorney, and three other correctional officers; (2) order the transcript of the Monterey County Superior Court proceeding during which the incident occurred; or (3) permit the introduction of photographs of Palmer's and the correctional officers' injuries. Id., ¶ 25, 29. Palmer claims that the additional witnesses and the transcript would have further documented what took place during the incident on July 16, 2004. Antonen Decl., Ex. D at 2-3, 5. He also contends that the excluded photographs would have documented that he was injured as a result of that incident, and that the relevant correctional officers were not injured. Id. at 5.

### 1. Applicable Law

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556-57, 571-72 n.19. Wolff established five constitutionally-mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary

evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved . . . or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

In order to meet the minimum requirements of procedural due process outlined in Wolff, the findings of a prison disciplinary board also must be supported by some evidence. Superintendent v. Hill, 472 U.S. 445, 454 (1985). The relevant question is whether there is any evidence in the record that could support the conclusion reached. See id.

The Due Process Clause requires only that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that prisons comply with their own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin v. Connor, 515 U.S. 472, 483-84 (1995). A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the Wolff standard." Id.

### 2. Analysis

Defendants argue they are entitled to summary judgment on Palmer's due process claim for the following reasons: (1) Palmer failed to allege the deprivation of a protected liberty interest; (2) Palmer received sufficient procedural protections at his September 7, 2004 disciplinary hearing, including (a) his qualified right to a helper and (b) his qualified right to call witnesses and present evidence; and (3) defendants are entitled to qualified immunity.

#### a. Protected Liberty Interest

Interests that are procedurally protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty.

7

Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)).

Here, Palmer's September 7, 2004 disciplinary decision did not involve a change so severe as to implicate the Due Process Clause itself. Instead, the placement of a California prisoner -- such as Palmer -- in the SHU as a result of disciplinary proceedings is subject to Wolff's procedural protections if the liberty interest implicated by the punishment is one of "real substance." See Sandin, 515 U.S. at 477-87.[3] A liberty interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or from state action that "will inevitably affect the duration of [a] sentence," id. at 487. Because Palmer was not assessed a forfeiture of time credits as a result of the disciplinary hearing, the question here is whether his SHU-term qualifies as an atypical and significant hardship.

Defendants argue that Palmer's SHU-term -- which they now argue was a total term of "less than two months" -- did not allege a deprivation of a liberty interest of real substance. Mot. for Summ. J. at 7. Defendants previously raised this argument in their motion to dismiss Palmer's FAC, filed on April 2, 2010. However, at that time, defendants alleged that Palmer spent a year in the SHU (from July 16, 2004 until July 14, 2005) because they were not aware that Palmer's SHU-term was stayed pending the resolution of his criminal case.

---

[3] There is some uncertainty as to whether, in addition to a liberty interest of real substance, there also must be state statutes or regulations that narrowly restrict the power of prison officials to impose the deprivation in order for a procedurally protected liberty interest to be found. Compare Sandin, 515 U.S. at 483-84 ("we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause"), and id. at 486 ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation *in which a State might conceivably create a liberty interest*"), with Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"). In the present case, the court need not decide that question because defendants do not assert that as a ground for summary judgment.

8

In an order dated December 10, 2010, the court analyzed whether Palmer's FAC alleged a sufficient liberty interest protected by the due process clause. In determining whether a restraint is an "atypical and significant hardship," the court outlined the three guideposts that have been identified to frame the inquiry, as follows:

> whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody; the duration of the condition and degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003). These factors need not all be present for there to be an atypical and significant hardship. Cf. Serrano, 345 F.3d at 1078 ("Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a condition or combination of conditions or factors"). For example, although Serrano and Ramirez list the impact on the duration of a prisoner's sentence among the factors to be considered, this is not a necessary element of an atypical and significant hardship; indeed, Sandin, 515 U.S. at 487, suggests that it is an alternate way to find a protected liberty interest.

Dec. 10, 2010 Order at 4. Typically, placement in segregated housing in and of itself does not implicate a protected liberty interest. See Serrano, 345 F.3d at 1078; see, e.g., Sandin, 515 U.S. at 485-86 (inmate's thirty-day placement in disciplinary segregation, where conditions mirrored conditions imposed upon inmates in administrative segregation and protective custody, did not result in type of atypical, significant deprivation for which state might create liberty interest); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (under Sandin no liberty interest when inmate placed in disciplinary segregation for fourteen days). However, the circumstances of a particular case may sometimes result in segregation working an atypical and significant hardship on an inmate so that it does implicate a protected liberty interest. See, e.g., Wilkinson, 545 U.S. at 224 (indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context"); Serrano, 345 F.3d at 1078-79 (protected liberty interest implicated when wheelchair-assisted inmate was put in a SHU not designed for disabled persons, because the placement forced him to endure a situation far worse than a non-disabled person sent to the SHU would have to face).

In its December 10, 2010 order, the court found that "the discipline imposed may not affect the amount of time Palmer spen[t] in prison, but -- with the necessary liberal construction

9

-- his allegations appear[ed] sufficient to allege an atypical and significant hardship," stating:

> During a 12-month period, Palmer allegedly was deprived of certain privileges otherwise available, was not allowed to possess a television or radio, was not given the amount of outdoor exercise regularly scheduled (although it cannot be determined just how much he did get), and was not allowed to use his "cane/medical appliance" in his cell (although it is not clear why Palmer needed either within his cell). He also allegedly was routinely subjected to numerous unpleasantries (i.e., having his cell "trashed," being denied access to the law library, and being denied outdoor exercise), and other unidentified prohibited acts. Some of the conditions that Palmer allegedly experienced appear to not have been part of the conditions imposed on all prisoners in the disciplinary SHU, but that cannot be determined from the pleading. At the motion to dismiss stage, the court accepts his allegations in paragraphs 31 and 32 of his first amended complaint as the disciplinary SHU conditions.

Dec. 10, 2010 Order at 4-5.

In the present motion for summary judgment, defendants argue that Palmer's two-month-SHU-term did not implicate a liberty interest. In addition, Defendants request that the court "revisit its prior ruling on Palmer's liberty interest in light of Swarthout [v. Cooke, 131 S. Ct. 859 (2011)]."[4] Defs.' Opp'n to Pl.'s Cross-Mot. for Summ. J. at 3.

Meanwhile, Palmer still claims that his SHU-term lasted for one year, Pl.'s Cross-Mot. for Summ. J. at 10, and that he was subjected to a "atypical and significant" restraint and deprived of certain privileges otherwise available. Whether a restraint -- for one year or even less than two months -- is "atypical and significant" under Sandin requires a case by case consideration. Ramirez, 334 F.3d at 860.

However, the court need not consider this issue because even if it were to assume that a protected liberty interest was implicated under these circumstances, Palmer's right to due process was not violated, as explained below.

### b.    The Process Due

When, as here, Palmer alleges the deprivation of a protected liberty interest in a

---

[4] In Cooke, the Supreme Court held that a prisoner subject to California's parole statute receives adequate process when he is allowed an opportunity to be heard and is provided with a statement of the reasons why parole was denied. 131 S. Ct. at 862. Defendants argue that the holding of Cooke "should apply with equal force to the facts of this case because the liberty interest alleged by Palmer is no greater that the liberty interest involved in [Cooke]." Defs.' Opp'n to Pl.'s Cross-Mot. for Summ. J. at 2.

10

1  disciplinary proceeding, the procedural protections to be afforded are set out in <u>Wolff</u>, 418 U.S.
2  at 564-70. In its December 10, 2010 Order, the court determined that those procedural
3  protections include the two at issue here: the qualified right to a helper, <u>id.</u> at 570, and the
4  qualified right to call witnesses and present evidence, <u>id.</u> at 566.

5  Defendants argue that they are entitled to summary judgment on both counts. The court
6  will analyze each of the aforementioned procedural protections below.

### 1) <u>Qualified Right to a Helper</u>

As mentioned above, Palmer claims defendant Sanchez violated his due process rights by failing to properly perform his duties as an investigative employee and Palmer's "helper" at the September 7, 2004 disciplinary hearing. FAC, ¶ 19. Specifically, defendant Sanchez failed to collect any of the requested evidence that Palmer intended to use to defend himself at his disciplinary hearing.

In <u>Wolff</u>, the Supreme Court explained an inmate's qualified right to a helper, stating:

> Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

418 U.S. at 570.

Here, the court notes that Palmer would not normally fall into the classification of an "illiterate inmate," instead, he seems to be an experienced litigator, especially after participating in his previous civil rights action, Case No. C 03-4213 SI (pr), and in his Monterey County Superior Court criminal action, No. SS042154-A. However, for the purposes of this analysis, the court assumes that he would have been entitled to a qualified helper.

Palmer claims that defendant Sanchez "was appointed as [his] Investigative Employee . . . to specifically assist [him] with the collection of the evidence needed to assist [him] with the presentation of a defense at the disciplinary hearing." Pl.'s Cross-Mot. for Summ. J. at 4. Palmer "prepared a list that contain[ed] specific documentary evidence and photographic

11

evidence that was needed to assist [him] in the presentation of his defense. Id. Palmer further claims that defendant Sanchez "informed [him] that he would return to collect this list of evidence . . . . " Id. at 5. However, defendant Sanchez "did not collect any evidence [Palmer] listed as being needed to assist with his defense." Id.

The court finds Palmer's allegations to be vague and conclusory because he does not specify what particular evidence defendant Sanchez failed to collect or how it would have been necessary in Palmer's defense. To the contrary, based on the record, the court finds that there is sufficient evidence to show that Palmer was not denied his qualified right to a helper because he received adequate assistance from defendant Sanchez. Specifically, on July 26, 2004, defendant Sanchez explained to Palmer his role as an investigative employee, which was to investigate the offense at issue. Sanchez Decl., ¶¶ 2, 4. In contrast to Palmer's claim above, the record shows that defendant Sanchez explained that his "function was to gather information, interview him, the Reporting Employee, and all persons having information regarding this matter." Id.; Ex. A. Defendant Sanchez then informed Palmer that Palmer had the right to object to defendant Sanchez's appointment. Palmer indicated that he understood the function of an investigative employee and did not object to the appointment. Id., ¶ 2; Ex. A. On the same date, defendant Sanchez attempted to interview Palmer about the July 16, 2004 incident; however, Palmer stated that he was "exercising [his] Miranda Rights to remain silent." Id., Ex. A. On August 11, 2004, defendant Sanchez interviewed Correctional sergeants Boles and Hatton, along with Correctional officers Boucher, Griewank, and Johnson regarding the July 16, 2004 incident. Id. Defendant Sanchez also collected medical reports relating to this incident. Id. ¶ 3. He compiled his notes from these interviews along with the medical reports in his investigative report. Id.; Exs. A, B. Prior to the September 7, 2004 disciplinary hearing, defendant Salazar confirmed that Palmer received a copy of the aforementioned investigative report. Salazar Decl., ¶ 3. Under these facts, defendant Sanchez's participation as investigative employee was not a violation of Palmer's qualified right to a helper under Wolff. Accordingly, defendant Sanchez is entitled to summary judgment as to Palmer's due process claim.

12

2) <u>Qualified Right to Call Witnesses and Present Evidence</u>

As mentioned above, Palmer alleges that defendant Salazar refused to: (1) permit him to present the testimony of various additional witnesses; (2) order the transcript of the Monterey County Superior Court July 16, 2004 proceeding; or (3) permit the introduction of photographs of Palmer's and the correctional officers' injuries. FAC, ¶ 25, 29. Palmer seems to claim that he was entitled to a postponement of the September 7, 2004 disciplinary hearing until he had a chance to present the testimony of these witnesses and the aforementioned evidence.

As explained in <u>Wolff</u>, the right to call witnesses is qualified and not absolute:

> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

418 U.S. 566.

Here, the record shows that Palmer's disciplinary hearing had to be continued twice. The first continuance occurred because some evidence and witnesses Palmer had requested from defendant Sanchez had not been obtained. Then the hearing was again continued so that staff witnesses could be at the hearing. When the hearing finally took place on September 7, 2004, defendant Salazar states that Correctional officers Boucher and Griewank testified about what they witnessed during the July 16, 2004 proceeding. Salazar Decl., ¶ 4. Defendant Salazar allowed Palmer to "ask both of these witnesses questions about their recollection of this event." <u>Id.</u> Additionally, defendant Salazar granted Palmer's request to have two inmates, Cummings and Moreno, testify about their recollection of the incident at issue. <u>Id.</u> Defendant Salazar "recall[s] that Palmer requested that other witnesses be called to testify." <u>Id.</u> However,

13

defendant Salazar does not recall the names of the witnesses Palmer had requested. Id. Defendant Salazar granted Palmer's request "by having a speaker-phone placed near him . . . ." Id. "[A]n attempt was made to contact these witnesses identified by Palmer." Id. Defendant Salazar claims that Palmer "grew frustrated with this arrangement and decided to waive his right to call any further witnesses." Id. The court assumes that Palmer was unable to reach any of these witnesses on the telephone. Defendant Salazar claims that Palmer was "exhibiting disruptive behavior;" therefore, efforts were made to ensure that "this waiver was documented and witnessed by Correctional officer Boucher." Id. The record shows that Correctional officer Boucher witnessed Palmer's "request to waive the rest of this Inmate Witnesses" and documented this by signing a CDC-128 B form or Informative/Witness Waiver Chrono. Id., Ex. B.

Defendants argue that because Palmer expressly waived his qualified right to call witnesses at the hearing, his due process claim fails. However, the court need not address this issue because even if Palmer had not waived his right, there is sufficient evidence in the record to show that defendant Salazar's decision to refuse to permit testimony of additional witnesses did not violate the mandates of Wolff.

While Wolff allows an inmate a limited right to call witnesses, it is illogical to argue that the right is implicated whenever a prisoner asserts that he intends to call additional witnesses to present undescribed testimony. Here, Palmer made such an assertion after four witnesses had already testified at the disciplinary hearing. Defendant Salazar states, "It appeared to me that these four individuals testified candidly and truthfully regarding the incident that they observed." Salazar Decl. ¶ 4. The record does not state whether, at the time of the disciplinary hearing, Palmer explained to defendant Salazar the reason why the testimony of these additional witnesses were necessary. While defendant Salazar did not recall the names of the witnesses Palmer requested, he allowed Palmer to contact them on the telephone. However, Palmer was unable to reach these witnesses even after being given the chance to call them at the disciplinary hearing. Palmer argues that the additional witnesses and the transcript of the proceeding would have further documented what took place during the incident on July 16, 2004. Antonen Decl., Ex. D at 2-3, 5. His argument is unavailing. The record shows that, in addition to the testimony

14

of the four witnesses at the hearing, defendant Salazar considered the testimony of three additional correctional personnel in the investigative report by defendant Sanchez as well as the nine other accounts contained in the incident reports, also compiled by defendant Sanchez. Therefore, the court finds that defendant Salazar's refusal to postpone the hearing to permit Palmer to present testimony from additional witnesses and to order the transcript did not violate his right to due process under Wolff.

Meanwhile, the court finds that while the photographs might well have been of benefit to Palmer had they been available at the time of his disciplinary hearing, defendant Salazar's refusal to postpone the hearing until such evidence was available did not violate Palmer's right to due process under Wolff. Although an inmate has the right under Wolff to present documentary evidence in support of his defense, that right is limited by correctional and institutional concerns. See Wolff, 418 U.S. at 566. A legitimate correctional concern is the prompt resolution of disciplinary charges. Such promptness not only encourages the confidence and cooperation of inmates by ensuring that they do not linger under the specter of unresolved allegations and that they have the opportunity to mount a defense before memories and witnesses fade, it also places a premium on prison administrators' need to punish troublemakers without undue delay. Thus, while Wolff sanctions the presentation of evidence in an inmate's defense, it does not require that inmates be given unlimited time to gather that evidence. Here, the aforementioned photographs would have been redundant and duplicative in light of the comprehensive incident and medical reports considered by defendant Salazar. Furthermore, the hearing had already been continued twice. Therefore, the court also finds that defendant Salazar's refusal to postpone the hearing to permit Palmer to present these photographs did not violate his right to due process under Wolff. Accordingly, defendant Salazar is entitled to summary judgment as to Palmer's due process claim.

C.     Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or

15

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however,

> a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Although Saucier required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In its December 10, 2010 order, the court initially found that it could not decide the issue of qualified immunity relating to Palmer's due process claim against defendants based on the "limited record," stating:

> Defendants might succeed on their qualified immunity argument, but cannot do so on the limited record that is now before the court. For example, the record right now is limited to the allegation that several witnesses were not allowed. Once the record is developed by plaintiff to explain who he asked to call as witnesses and the reason he wanted to call each of those persons as witnesses, and once the record is developed by the defendants to explain the reason for disallowing the witnesses, the qualified immunity analysis may be done. See Wolff, 418 U.S. at 566 ("it would be useful for the [decision-maker] to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases"); Ponte v. Real, 471 U.S. 491, 497 (1985) (reason may be presented after-the-fact in court proceeding if the refusal to allow witnessses is challenged). Likewise, once the record is developed as to the documentary evidence that was disallowed -- e.g., what plaintiff intended to prove with it, and why defendants didn't allow him to present it -- the qualified immunity analysis may be done.

Dec. 10, 2010 Order at 8.

In this order, the court has found that defendants' actions do not rise to the level of a

constitutional violation. However, even if Palmer's rights had been violated and his rights were clearly established at the time of the violation, defendants are entitled to qualified immunity because they have produced sufficient evidence showing that they could have believed that their actions were reasonable based on the circumstances they confronted.

As mentioned above, there is sufficient evidence to show that Palmer was not denied his qualified right to a helper because he received adequate assistance from defendant Sanchez. Defendant Sanchez interviewed five correctional officers regarding the July 16, 2004 incident, and he collected medical reports relating to this incident. He compiled his notes from these interviews along with the medical reports in his investigative report. Prior to the September 7, 2004 disciplinary hearing, defendant Salazar confirmed that Palmer received a copy of the investigative report. A reasonable officer in defendant Sanchez's position would have found that his adequate participation as investigative employee was lawful, and therefore not a violation of Palmer's qualified right to a helper under Wolff.

As for the due process claim against defendant Salazar, Palmer claims that his qualified right to call witnesses and present evidence was violated when he was not permitted to present additional witnesses, the transcript of the proceeding, and photographs of injuries. Palmer claims the additional witnesses and the transcript would have further documented what took place during the incident on July 16, 2004. However, as mentioned above, the record shows that defendant Salazar considered the testimony of the four witnesses at the hearing, the testimony of three additional correctional personnel in the investigative report by defendant Sanchez as well as the nine other accounts contained in the incident reports, compiled also by defendant Sanchez. A reasonable officer in defendant Salazar's position would have found lawful his refusal to postpone the hearing to permit Palmer to present testimony from additional witnesses and the transcript of the proceeding, especially in light of the numerous other testimony considered relating to the July 16, 2004 incident. Furthermore, a reasonable officer in defendant Salazar's position would have also found lawful his refusal to postpone the hearing to permit the introduction of the aforementioned photographs because, as stated above, these photographs would have been redundant and duplicative in light of the comprehensive incident and medical

17

reports.

Accordingly, defendants are entitled to qualified immunity with respect to Palmer's due process claim and thus are entitled to summary judgment as a matter of law.

II.     Palmer's Cross-Motion For Summary Judgment

Palmer has filed a cross-motion for summary judgment. When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001). Not only does the moving party for summary judgment bear the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact, see Celotex, 477 U.S. at 323, but where the moving party will have the burden of proof on an issue at trial, as does Palmer here, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Moreover, the court must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

Here, based on the court's detailed review above of the pleadings, discovery and affidavits set forth by both parties, and viewing the evidence in the light most favorable to defendants, the court must conclude that Palmer has not carried his burden of presenting evidence which affirmatively demonstrates that no reasonable trier of fact could find other than for him as to his due process claim. Accordingly, Palmer's cross-motion for summary judgment is DENIED.

In his cross-motion for summary judgment, Palmer also seems to allege new claims of retaliation and due process violations stemming from his "5 months in the lock up until at SATF [the California Substance Abuse and Treatment Facility], from December 7, 2005, to May 2, 2006." Pl.'s Cross-Mot. for Summ. J. at 10-11.

18

The court construes such allegations as a request to amend his FAC to add claims relating to his conditions of confinement at SATF. If Palmer seeks to bring an action in federal court about the conditions of confinement at SATF, he must file a civil rights complaint under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of California. Accordingly, Palmer's request to amend his FAC is DENIED without prejudice to filing a new action in the Eastern District relating to the alleged conditions of confinement at SATF.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED, and Palmer's cross-motion for summary judgment is DENIED. (Docket # 31, #32.) Defendants are entitled to judgment as a matter of law on the merits of the due process claim and on their defense of qualified immunity.

Furthermore, Palmer's request to amend his FAC is DENIED without prejudice to filing a new action in the Eastern District relating to the alleged conditions of confinement at SATF.

Judgment will be entered in all defendants' favor and against Palmer. The clerk will close the file.

IT IS SO ORDERED.

Dated: July 25, 2011

_____
SUSAN ILLSTON
United States District Judge